# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **MORGAN MURPHY,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CASE NUMBER 2:13-cv-409-LSC |
| | * | |
| **BANK OF AMERICA, et al.,** | * | |
| | * | |
| Defendants. | * | |

### PLAINTIFF'S RESPONSE TO BANK OF AMERICA'S
### MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Comes now Morgan Murphy, sole Plaintiff herein ("Murphy"), and responds to the Bank of America's Motion to Dismiss Plaintiff's Complaint With Supporting Brief filed on March 5, 2013 as follows:

### Procedural History

A. On July 23, 2012, Murphy filed a Class Action complaint in the United States District Court for the Northern District of Alabama, Southern Division (2:12-cv-2520-VEH), on behalf of military servicemembers claiming violations of the Servicemembers Civil Relief Act ("SCRA" or the "Act"). Numerous active and retired military persons had communicated to counsel for Murphy that they felt such an action was necessary to enforce their rights under the Act.

B.      On November 28, 2012, the Honorable Virginia E. Hopkins, United

States Federal District Judge for the Northern District of Alabama , ordered Murphy's Class Action case dismissed **without prejudice**. In the Court's memorandum opinion, the Judge concluded that Bank of America, N.A. (Hereinafter referred to as, in the Defendant's brief, "BANA", or the "bank") had not violated any provision of the SCRA by it behavior. Interestingly, however, Judge Hopkins noted at page 10 of her opinion that: "**If BOA represented to Murphy that he did not have to pay his mortgage while away in Afghanistan, then Murphy may have a claim for misrepresentation.**"

    C.    Murphy noticed an appeal to the Eleventh Circuit Court of Appeals on December 28, 2012, but decided not to pursue the appeal in lieu of proceeding against BANA in Jefferson County, Alabama, Circuit Court on fraud, negligence, wantonness and other claims related to BANA's behavior toward Murphy individually. Upon Murphy's request, the appeal was dismissed on March 4, 2013.

    D.    Murphy had filed his state court complaint (the "Complaint") on January 30, 2013 (Civil Action No. CV-2013-900358) and BANA petitioned for its removal on February 28, 2013. Murphy has not opposed the removal although he has asserted no claims giving rise to federal question jurisdiction. Although there were several fictitious defendants listed in the Complaint, Murphy does not have sufficient information to identify any BANA employees whose citizenship is in Alabama and

who participated in the behavior giving rise to the claims. Therefore, Murphy has not yet determined whether there is a lack of diversity of citizenship.

## Standard of Review

The parties do not disagree on the standard of review which must be met by a complaint to avoid being dismissed at the outset of the civil action. The Eleventh Circuit Court of Appeals recently articulated precisely the requirements for a complaint to survive a motion to dismiss pursuant FRCP 12(b)(6). As stated succinctly by the appellate court:

> At the pleadings stage of litigation, we ask only if plaintiffs have adequately stated a claim for which relief can be granted. ... Federal Rule of Civil Procedure 8(a)(2) requires that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8's pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." ...Rather, "[t]o survive ... a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" ... The plausibility standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability.

*Chaparro v. Carnival Corporation,* 693 F.3rd 1333, 1336-1337 (11th Cir. 2012).

## Introduction

Murphy's Complaint does not seek to establish a class or obtain relief pursuant to or under the SCRA. He does not allege in the Complaint any violations of the Act.

3

The Act merely sets the context and provides the circumstances under which Murphy began his communications with BANA.

As stated by the Eleventh Circuit Court of Appeals, a complaint does not have to provide detailed factual allegations. Murphy has chosen, however, to provide substantially detailed allegations, devoting fifteen (15) paragraphs and approximately six pages to his rendition of the specific facts that support claims against BANA.

Murphy also provides a six-paragraph Introduction which suggests a context for his reliance on representations made to him by BANA. The Introduction does not, despite BANA's position in its brief, attempt to assert claims based on SCRA but to show that the existence of the Act simply set the stage and provided the impetus for Murphy's initial contacts with BANA.

The Parties are described in detail on pages 3 and 4 of the Complaint because BANA has engaged in lending practices not related to SCRA which have violated the law. In two cases against BANA, the United States Department of Justice has collected, in one, $335,000,000 from BANA for racially discriminatory lending practices and, in another, $137,200,000 for BANA's participation in a conspiracy to rig bids in the municipal bond derivatives market.

BANA also is the subject of a lawsuit brought in New York by the Justice Department in October 2012 for mortgage fraud. Based on BANA's wrongful

business conduct, it is reasonable to believe that Murphy has been a victim of the same culture of fraud, negligence and wantonness exhibited by BANA in its dealings with so many others. This case is not appropriate for dismissal for failure to state a claim.

## The Facts

Morgan Murphy has made the following specific factual allegations in his Complaint against BANA.

Murphy is a decorated Naval officer who has served his country in the military on four continents since joining the Navy in 1999. In his civilian life, Murphy is a Southern humorist, journalist, book author and chief executive officer of Motorpool.com. His book, *Off the Eaten Path,* was published by Time, Inc., in 2011 and was a bestseller. Prior to founding Motorpool.com, Murphy was employed as travel editor, food critic and national spokesman for Southern Living magazine.

BANA purports to hold a first mortgage on Murphy's residence in Birmingham, Alabama. The loan to Murphy and his ex-wife was originated by BBVA Compass Bank. Discovery in this case could easily show that BANA does not even own the debt it seeks to collect from Murphy as has been true in other cases involving BANA.

Murphy was called up for active duty in Afghanistan in July 2010 and his duty

commenced on September 17, 2010. Because he was called up for active duty, Murphy contacted BANA by telephone prior to leaving for Afghanistan to submit his military orders to BANA. Murphy did so because he thought his military status might give him some financial relief pursuant to federal law such as SCRA. He spoke to Youlanda Agulara at BANA to discuss his orders and to learn what, if any, assistance he could receive from the bank while on active duty.

Agulara told Murphy that he would not have to make a payment on his home mortgage until January 1, 2012 and that there would be no negative credit reporting until after December 1, 2011. Agulara also informed Murphy that he could ask BANA for a loan modification upon his return from service. She obviously did not consider her representations regarding the time Murphy's next mortgage payment would be due or the limits on credit reporting to constitute a loan modification. Murphy also was told that he was protected from foreclosure until September 2012. Murphy requested written confirmation of the representations made to him by Agulara and he received a letter from BANA dated September 10, 2010. According to the letter:

> On July 29, 2008, President Bush signed into effect the Housing and Economic Recovery Act of 2008. As part of this Act, SCRA benefits were enhanced and extended for certain individuals.

.

> For individuals whose duty ends between July 30, 2008 and December 31, 2010, twelve additional payments will

> be covered under the Servicemembers Civil Relief Act. This means that for an additional twelve payments, those who qualify will receive a reduced interest rate of 6%, as well as protection from late charges. Credit reporting will also be blocked for those twelve payments.
>
> This letter is being sent to you as it appears you may qualify for the additional protection provided under the Housing and Economic Recovery Act of 2008.
>
> Please note that if you do in fact qualify, there is nothing further required from you, and we have already begun processing your loan under the new guidelines.

The letter was sent in the name of the SCRA Department, Bank of America Home Loans.

Murphy's last day of active duty was June 6, 2011. Without any warning that his loan was being treated as if it were in default, BANA sent Murphy a letter dated October 27, 2011, telling him that he had been assigned a customer relationship manager to discuss with him programs that would help him avoid foreclosure.

On November 4, 2011, Murphy telephoned BANA and spoke to someone who told him that his loan was not current and that the bank had been issuing negative credit reports to the credit reporting agencies despite its prior representation that it would not do so until after December 1, 2011.

Murphy called BANA on November 11, 2011, and spoke to bank employee Rhonda McGee who told him BANA had begun reporting adversely on his credit

after August 2011 because BANA's internal policies on adverse reporting had changed. She suggested that Murphy seek a loan modification and took information from him which she said would get the modification process started. McGee told Murphy that he was not protected from foreclosure but that BANA could not foreclose on him until September 1, 2012. Murphy also was told that he would hear from BANA in 5 to 10 days about the modification.

Despite having communicated that Murphy's loan was in a distressed status, BANA wrote him on November 7, 2011, that he should disregard the October 27, 2011 letter alleging the distressed loan status because his loan was not in a customer relationship manager status.

Murphy relied on the November 7, 2011 letter that his loan was fine and was surprised when he next checked his credit report. He learned that his credit score had dropped from a high of 800 as of June, 2005 to 663 as of March 26, 2011.

Murphy did not hear back from BANA about loan modification within 5 to 10 days as McGee had represented he would so he sent a certified letter on November 28, 2011, requesting written confirmation of his options for modifying his loan and having his credit report corrected. On December 28, 2011, Murphy followed up his letter with a telephone call to the BANA Military Assistance Unit. He spoke with Selena Brown who reviewed his file and told him that no workout options were

available to him. She said that, despite the representations in BANA's November 7, 2011 letter that his loan was not in a customer relationship manager status, it really was in such status but had not been assigned to an actual customer relationship manager at the time.

On December 29, 2011, Murphy asked BANA to provide him with a written clarification of the status of his loan. In January 2012, Murphy received a telephone call from Cale Readis in the BANA Military Assistance Unit. Readis told Murphy that BANA would correct his credit report. Readis also apologized for the inconvenience. He suggested that Murphy "stay on top of the mortgage modification department" and asked Murphy to email copies of his credit reports to Readis.

On January 18, 2012, Murphy learned his credit score had dropped from 786 in May 2011 to 661.

On July 5, 2012, Murphy was informed by a BANA employee named Stacy that he should have received a notice that BANA intended to foreclose his mortgage on August 12, 2012. Murphy was confused because holding a foreclosure sale on August 12, 2012 contradicted the representations made to him by BANA in July 2010 that his mortgage was protected from foreclosure until September 2012.

In his ongoing efforts to obtain a loan modification from BANA, Murphy has responded to numerous requests by the bank for documents and information BANA

said were necessary to modify his loan. Murphy responded to each document request beginning in about August 2012 and continued to do so up to and through January 2013. Murphy was notified by telephone on January 28, 2013 that he had supplied all the documents and information necessary for the bank to make a decision on his modification request. On January 29, 2013, Murphy was informed that, contrary to the representations made the previous day that no additional information was needed, he had to supply at least seven (7) additional documents, some of which had been supplied previously, for his modification to be considered.

## Argument and Conclusion

As this Court knows, the issue on the Motion to Dismiss is whether the Complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" ... The plausibility standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Chaparro* at 1337.

The following are some of the representations made to Murphy by BANA:

- Murphy would not be required to make a mortgage payment until January 1, 2012;

- There would be no negative credit reporting until after December 1, 2011;

• Murphy's loan was in default and he needed a customer relationship manager;

• BANA had made an error and Murphy's loan was not in a status necessary for him to have a customer relationship manager;

• The bank would consider modifying Murphy's loan if he would supply the necessary documents. Murphy supplied the documents and was told that he had complied with the document request. One day later, BANA informed Murphy it needed more documents to process his request;

• The negative credit reports submitted by BANA on Murphy had been made in error and his credit report would be corrected;

• A foreclosure was scheduled on his residence for August 12, 2012 when BANA admittedly had sent the notice of acceleration to the wrong address and had previously represented to Murphy no foreclosure could occur until September 2012.

The facts show a pattern and practice of false representations, negligence and/or wantonness in every aspect of its dealing with Murphy on his loan. In fact, BANA simply engaged in the same types of wrongful conduct with Murphy for which is has already had to pay the Department of Justice in excess of $472,500,000.

Murphy's claims for fraud, negligence and wantonness are based on BANA's undertaking duties to protect him and his credit while he was on active duty and to engage in the loan modification process in good faith. He does not base his claims on

11

the Bank's failure to comply with SCRA or the Fair Credit Reporting Act or any other federal law. Murphy may be entitled to assert that BANA was subject to federal laws by which the loan modification process was mandated in a manner as to render the Statute of Frauds ineffective as a defense. Nevertheless, Murphy's current or possible rebuttal to BANA's defenses related to the Statute of Frauds is not necessary to conclude that this case should not be dismissed.

Murphy has pled his fraud, negligence and wantonness claims with sufficient particularity and meets the Federal Civil Rule of Procedure 9(b) standard. Murphy was told by a specifically named bank employee on a specific date that his credit would not be adversely reported and he also was told by the employee when his next mortgage payment would be due. Murphy relied on the representations and did not make his mortgage payments. He also relied on his credit reporting not to be adversely for any reason until December 2011 and could not have known that the bank would change its internal credit reporting policies (without any reference to SCRA) to eliminate the protection for adverse credit reporting it told him he would receive.

Murphy needed good credit for a number of reasons among which was the ability to refinance his home mortgage with lenders other than BANA when he returned from Afghanistan. The representation about the due date for the payment and

negative reporting were clearly false and resulted from fraud, negligence or wantonness.

BANA undertook to duties to accurately report his credit and to repair the credit when the negative reports were made. In fact, an employee of the bank represented to Murphy that the bank would repair his credit. Not so, and BANA has refused additional specific requests for credit repair made prior to Murphy filing any case against BANA.

BANA also undertook a duty to modify Murphy's loan or to make a decision within a reasonable time of Murphy's request. BANA did not do so despite telling him that he had, indeed, supplied all the documents necessary for a decision. While Murphy was seeking a decision by BANA on loan modification, his alternatives were diminished or eliminated.

A lender's under taking a duty fully supports claims made against the lender in Alabama for breaching the duty by fraud, negligence or wantonness. *See Fassina v. Citimortgage, Inc.,* ___ F.Supp. ___ (N.D.Ala. 2012)(2012 WL 2577608)(which has a number of similar facts and issue of law) at Page 5. In the case, the Honorable David Proctor, United States District Judge for the Norther District of Alabama, was asked to dismiss a lender liability action on many of the same bases asserted by BANA. In that case there are a number of critical differences but the discussion of the

law and reasoning is instructive and pertinent.

BANA undertook duties such as protecting Murphy's credit from adverse reporting, properly processing Murphy's loan request, and accurately communicating to Murphy the status of his loan. BANA did not do so but intentionally or negligently misrepresented presently existing material facts upon which Murphy reasonably relied to his detriment. BANA's Motion to Dismiss is due to be denied.

Respectfully submitted this 1st day of April, 2013.

*S/ Romaine S. Scott, III*
Romaine S. Scott, III (ASB-0730-c64r)
Attorney for the Plaintiff

OF COUNSEL:

Scott & Scott Law, LLC
Post Office Box 1248
Fairhope, Alabama 36533

Telephone: 251-621-8088
Facsimile: 251-621-8069
Email: rss@saslawllc.com

## CERTIFICATE OF SERVICE

  I hereby certify that I have caused to be served on April 1, 2013, a copy of the forgoing on the following counsel of record for the Defendant by filing the same with the court's e-filing system on:

  Michael R. Pennington
  Keith S. Anderson
  Robert R. Maddox
  Bradley Arant Boult Cummings LLP
  1819 Fifth Avenue North
  Birmingham, Alabama 35203-1204

    */S/ Romaine S. Scott, III*
      OF COUNSEL